JORDAN v. KATZ & BESTHOFF, LTD.

———

(February 2, 1931. Opinion and Decree.)

———

W. J. & H. W. Waguespack, of New Orleans, attorneys for plaintiff, appellant.

Lemle, Moreno & Lemle, of New Orleans, attorneys for defendant, appellee.

CAGE, Judge ad hoc. This suit arises out of an automobile collision which took place at the intersection of Broadway and S. Claiborne avenue on June 14, 1928.

The plaintiff was driving a Nash sedan out Broadway towards the lake. The defendant's delivery truck, driven by one Percy Eirman, was going down on the lake roadway of S. Claiborne avenue, and the collision occurred in the intersection of Broadway street with the lakeside roadway of S. Claiborne avenue near the center of this roadway.

It is contended that we should take judicial notice of the fact that in driving down on the lake roadway of S. Claiborne avenue, "against traffic," the defendant's truck was violating a city ordinance. But no city ordinance is pleaded, and, as therefore none could be proven, we cannot take judicial notice of the existence thereof, if, in truth, one such exists.

"As a district court cannot take judicial cognizance of city ordinances, it is clear that, where no violation of an ordinance is charged in a suit for damages as the basis of fault, the existence of an ordinance cannot be presumed." Valenti et ux. v. Oster Bros. Carriage & Wagon Manufacturing Co. et al., 154 La. 991, 98 So. 553, 554.

The plaintiff himself is his sole witness to the accident. He swears, as do all the other witnesses, that an extremely hard rain was falling; that, when he reached the intersection of S. Claiborne avenue with Broadway, he brought his car to a full stop, then, having looked up the riverside road-way, and seeing no cars, and having looked down the lakeside roadway, and having seen no cars coming, he proceeded across, and had attained a speed of about fifteen miles per hour when, arriving in the lakeside roadway, he saw, for the first time, the Katz & Besthoff truck about 6 feet from him, that he swerved to the right in an attempt to avoid the collision, driving his car on the downtown sidewalk, of Broadway, and proceeded driving until he found an automobile roadway by which he could get off of the sidewalk and on to the paved street.

Percy Eirman, the chauffeur of defendant's truck, swears that, when he approached the Broadway intersection, he saw the Nash sedan approximately a block towards the river, about at Sycamore street, that he stopped his truck, and then proceeded across, when he was struck by the Nash sedan.

The stories of the two men driving the two machines are diametrically opposite, and cannot be reconciled.

The only other eyewitness to the collision was a man named Paul McGhee, who, at the time, was a chauffeur for the Yellow Cab Company, and who, at the time of the trial, was employed by the New Orleans Public Service, Inc., and is apparently a totally disinterested witness and evidently fair and seeking only to tell the truth as he saw it.

His testimony is that he was driving his cab, with a passenger in it, on Broadway on the upper roadway of that street, and that, when he reached the intersection of that street with S. Claiborne avenue, he saw the Katz & Besthoff truck going down the roadway towards Canal street, and he saw the Nash sedan coming in Broadway towards the lake. He testifies that it was

raining so hard as to make it difficult or impossible to see an automobile more than two blocks off; that the Katz & Besthoff truck was going at the rate of 30 to 35 miles an hour, and made no stop whatsoever; that the Nash sedan was going, perhaps a little slower, 28 to 30 miles an hour (these being approximations), and that it made no stop whatsoever, but came directly on, and the collision occurred as stated.

Accepting McGhee's testimony as true, which we do, it is apparent that both parties were at fault, for it is surely fault for the driver of an automobile in a heavy rain, such as was then prevailing, with his windows up, to approach such an intersection, as that of Broadway and S. Claiborne avenue, at the speeds of these two machines. We therefore find as a fact that both drivers were at fault, and, as the defendant had pleaded the fault of the plaintiff as contributory negligence barring recovery, there can be no recovery, unless we are able to apply the doctrine of the last clear chance which has been invoked before us by counsel for the plaintiff.

Under our understanding of that doctrine, it has no application to this case. As we understand it, the doctrine can only apply where the fault of the plaintiff has become an accomplished fact, but where it has ceased activity, and where the commission of the fault has already placed him in a position of danger from which he is unable to extricate himself, and the predicament in which he has placed himself through his own fault was seen by the defendant, or should have been seen by him, in time to avoid the injury; but we understand that, where the fault of the plaintiff is a continuing fault, the doctrine cannot be successfully invoked.

In order that this doctrine should apply, the fault of the plaintiff must have been an accomplished fact, irrevocable and irremediable. It must have placed him in a position where he could only be saved from injury by the act of the defendant; and where the defendant could, and should, have seen his predicament in time to avoid injuring him, and fails so to do, the fault of the plaintiff is blotted out, and the fault of the defendant is considered as the proximate cause of the injury. Indeed, it may, pro hac vice, be considered the sole cause.

In the case of Harrison v. Louisiana Western Railroad Co., 132 La. 761, 61 So. 782, 783, it was held:

"In the other two [cases] the person injured had lost the ability to get himself out of the danger, and, where this is the case, his negligence can no longer be said to have been the proximate cause of the injury. In these two cases, the person injured lay unconscious upon the track with no chance whatever therefore of saving himself; and the engineer coming on with his train had the last clear chance of averting the accident. In the instant case the old man continued down to the last moment to have just as good, if not a better, chance than the engineer to avert the accident."

In the same volume, and on page 766 (61 So. 784), the court quotes with approval:

"This so-called exception to the rule of contributory negligence (i. e., the doctrine of 'last clear chance') will not be extended to cases where the plaintiff's own negligence extended up to and actually contributed to the injury. *To warrant its application there must have been some new breach of duty on the part of the defendant subsequent to the plaintiff's negligence.*" (Italics ours.) A. & E. E. of L. Suppl. vol. 2, page 64, notes 4 and 5.

This case is referred to with approval, and again the law is stated with equal clarity in Castile v. O'Keefe, 138 La. 479, et seq., 70 So. 481.

As we find from the statement of facts above given that both parties were continu-

ously negligent up to the moment of impact, we can find no ground or justification for applying the doctrine.

The judgment of the lower court was for the defendant. We think it is correct, and it is affirmed.

WESTERFIELD, J., absent, takes no part.